IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PENDLETON DIVISION

| | |
|---|---|
| THE ESTATE OF SUSAN K. DICK *by and through personal representative Bobby J. Dick*<br><br>Plaintiff,<br><br>v.<br><br>DESERET MUTUAL BENEFIT ADMINISTRATORS,<br><br>Defendant. | Case No. 2:21-cv-01194-HL<br><br>**OPINION AND ORDER** |

HALLMAN, United States Magistrate Judge:

Plaintiff, the Estate of Susan Dick, brings this Employee Retirement Income Security Act ("ERISA") action against Defendant, Deseret Mutual Benefit Administrators ("Defendant" or "Deseret Mutual"). Ms. Dick was a participant in Deseret Mutual's ERISA Plan. Her Estate now alleges that she is entitled to recover medical expenses for radiation therapy that Deseret Mutual failed to pay under the Plan and that Deseret Mutual is subject to statutory penalties for failing to provide certain Plan documents to Plaintiff. First Am. Compl. ("FAC") ¶¶ 15, 18, ECF 23. Both parties filed motions for summary judgment, ECF 31, 35, and this Court heard oral argument in this matter on December 19, 2022. ECF 43.

For reasons set forth below, the Court GRANTS Plaintiff's Motion for Summary Judgment, DENIES Defendant's motion, and ORDERS Judgment in favor of Plaintiff for

PAGE 1 - OPINION AND ORDER

payment of benefits and statutory penalties in the amount of $55 per day. Plaintiff shall prepare an appropriate Judgment consistent with this Opinion and, after conferring with Deseret Mutual, submit an agreed form of Judgment to the Court for signature within ten days of the date below.

## BACKGROUND

Ms. Dick participated in the Deseret Value Plan under the Deseret Healthcare Employee Welfare Benefits Plan (the "Plan"), which is an ERISA plan. Answer to FAC ¶ 1, ECF 26; DMBA 00300-325, 158-237, ECF 32, 35.[1] Deseret Mutual administers the Plan. Answer ¶ 7, ECF 26. The Plan grants Deseret Mutual sole discretion to interpret the terms of the Plan, make factual determinations, and decide participants' eligibility for benefits under the Plan. FAC ¶ 8, ECF 23; Answer ¶ 8, ECF 26.

The Plan specifies that "[b]enefits are available under the Plan when Covered Expenses are incurred by a Covered Individual for Services while the person participates in the Plan." DMBA 00175. Covered expenses are defined as:

(a) for Services that are Medically Necessary and on the recommendation, and while under the continuous care of, a Physician or other Provider;

(b) for one or more of the Services specified in Appendix A or as otherwise set forth in the Plan;

(c) that are not in excess of Allowable Amounts, as determined by the Plan Administrator;

(d) that are not Excluded Expenses; and

(e) that occur during a period of active enrollment under the Plan.

---

[1] Part of Deseret Mutual's Administrative record was lodged with the Court, ECF 36, and the parties filed excerpts of the record as exhibits with their motions for summary judgment. ECF 35, 38.

PAGE 2 - OPINION AND ORDER

DMBA 00161. The Plan also defines "excluded expenses" as "[a]ny charges that are not Covered Expenses under the Plan, including the expenses set forth on Appendix C." DMBA 00163. As relevant here, Appendix C lists radiation therapy as a covered expense and states that "[p]reauthorization is required for certain radiation therapy such as . . . brachytherapy. Failure to obtain Preauthorization results in a $200 penalty per day if approved on appeal or review." DMBA 00207.

In June 2020, Ms. Dick was diagnosed with a liver cancer called hypermetabolic liver epithelioid hemangioendothelioma or "HEHE." DMBA 00589-590. In July 2020, Ms. Dick sent in a preauthorization request for coverage of Short Interval Radiation Therapy ("SIRT") to address her HEHE. DMBA00340-64. Doctors recommended this treatment to stave off Ms. Dick's HEHE while she waited for a transplant. DMBA 00691, 00430-433. The preauthorization request included her medical records, including the imaging and lab results multiple doctors used to recommend the procedure. DMBA 00483-91.

On July 15, 2020, a representative from Deseret Mutual contacted Ms. Dick's daughter to inform her that the request for SIRT would be denied based on Deseret Mutual's Medical Policy for Radiation Oncology: Therapeutic Radiopharmaceuticals Selective Internal Radiation Therapy (the "Medical Policy"). DMBA 00879. Ms. Dick's daughter asked what policy criteria were not met. DMBA 00880. Deseret Mutual explained the basis for the denial but declined to give Ms. Dick's daughter the Medical Policy in writing. DMBA 00881.

On July 16, 2020, Deseret Mutual issued a written denial of Ms. Dick's preauthorization request. DMBA 00691. Deseret Mutual determined that the medical criteria guidelines for SIRT had not been met. *Id*. In making this determination, Deseret Mutual relied upon the Medical Policy. *Id*. The Medical Policy describes the type of SIRT procedures Deseret Mutual intends to

PAGE 3 - OPINION AND ORDER

cover. DMBA 00850. The policy does not directly discuss HEHE. *Id*. The most applicable policy provision provides coverage criteria for "using SIRT as a bridge to liver transplantation." This provision applies because Ms. Dick intended to use this radiation to buy her time to have a liver transplant. *Id*; DMBA 00326, 00338, 00343-44. This policy provision requires "[t]hree or fewer encapsulated nodules and each nodule is ≤ 5 centimeters in diameter," and no cancer growth outside the liver (i.e., extra-hepatic metastases). DMBA 00850. Ms. Dick did not meet these criteria because she had more than three nodules, one nodule was greater than five centimeters, and she had cancer growth outside the liver. DMBA 00343, 00350, 00337. The policy also states the patient must have an ECOG performance status of 0 or 1, which means they can carry out all non-strenuous activities. DMBA 00850. Ms. Dick did not meet this criterion either. DMBA 00484 (stating ECOG was a 3).

Ms. Dick appealed the denial, and on October 2, 2020, Deseret Mutual denied her first level appeal. DMBA 00430-433. The response to the first level appeal reiterated her SIRT did not fit within the Medical Policy. DMBA 00432. Deseret Mutual also referenced the Summary Plan Description ("SPD"), which is a summary of the benefits the employees should expect to receive under the Plan. DMBA 00001. The SPD states you "must meet our medical criteria to be eligible for benefits," and "If your situation doesn't meet our medical guidelines and [Deseret Mutual] ultimately denies benefits for the service, you're responsible for all charges." DMBA 00022.

Ms. Dick continued to challenge Deseret Mutual's decision, including having Ms. Dick's oncologists attempt to engage in peer-to-peer consultation with Deseret Mutual and submit letters supported by medical research and Ms. Dick's medical records to Deseret Mutual. DMBA 00748-803, 00366-404. Ms. Dick submitted a second level appeal request, and on December 18,

PAGE 4 – OPINION AND ORDER

2020, Deseret Mutual denied her second level appeal. DMBA 00334, 00337. In its final conclusion, Deseret Mutual stated:

> The medical policy states the Plan does not cover [SIRT] when the Claimant does not meet all of the medical criteria listed in the Radiation Oncology: Therapeutic Radiopharmaceuticals medical policy. In this case, the Claimant has an ECOG performance score of 3 which is too high, has too many encapsulated nodules — more than three— and has evidence of extra-hepatic metastases. Consequently, the Claimant did not meet the medical criteria for RPT. Because of this, the Claimant's preauthorization request for [SIRT] was denied appropriately and the denial should be upheld.

DMBA 00332. In the final denial letter, Deseret Mutual noted one of its policies that stated Investigational/Experimental treatments were not covered. DMBA 00327. But Deseret Mutual provided no explanation as to why Ms. Dick's treatment was Investigational/Experimental. DMBA 00332.[2]

Despite the denial, Ms. Dick proceeded with the treatment and incurred what she alleges to be $229,173.27 in medical expenses.[3] Ms. Dick subsequently passed away.

Plaintiff's counsel sent a letter to Deseret Mutual requesting all documents concerning the denial, including the Medical Policy, on March 26, 2021. Stanke Decl. ¶ 1. Deseret Mutual acknowledged the request but did not provide a copy of the Medical Policy until February 11, 2022. Stanke Decl. ¶¶ 2-3.

---

[2] Deseret Mutual's final denial also referenced "medical necessity" and its definition under the Plan. DMBA00335. However, Deseret Mutual did not base its denial on the lack of medical necessity. *See* DMBA 00691. Further, in this proceeding, Deseret Mutual expressly acknowledges that it did not reach the issue of medical necessity. Def.'s Reply. in Supp. Summ. J. 3, ECF 39. Accordingly, it is unnecessary for this Court to consider Plaintiff's arguments pertaining to medical necessity, as it was not a grounds for the denial.

[3] Plaintiff's Complaint alleges that Ms. Dick incurred $229,173.27 in medical expenses as a result of Deseret Mutual's denial. FAC ¶ 15. In its Answer, Defendant denies this allegation based on a lack of information. Def.'s Answer ¶15. Neither party provides any evidence regarding this amount on summary judgment.

PAGE 5 - OPINION AND ORDER

Plaintiff filed this action on August 13, 2021, alleging that Deseret Mutual wrongfully denied Ms. Dick coverage for SIRT to address cancer in her liver. FAC ¶ 1, ECF 23. Plaintiff also asserts that Deseret Mutual should be required to pay statutory penalties of $110 per day for wrongfully withholding the Medical Policy for more than 30 days after Plaintiff's written request. FAC ¶ 18.

## LEGAL STANDARDS

### I. Abuse of Discretion Under ERISA

"When a court reviews an ERISA plan administrator's decision to grant or deny benefits, *de novo* is 'the default standard of review.' However, if the plan grants discretion to the plan administrator 'to determine eligibility for benefits or to construe the terms of the plan,' the court reviews the administrator's decision for an abuse of discretion." *Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trustees*, 588 F.3d 641, 646 (9th Cir. 2009) (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir.2006) (en banc)). When the ERISA plan "unambiguously gives the administrator discretion to determine eligibility . . . courts review the administrator's decision for abuse of discretion . . . ." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). Here, the parties agree that the plan unambiguously gives Deseret Mutual the discretion to determine eligibility. FAC ¶ 8, ECF 23; Answer ¶ 8, ECF 26.[4]

---

[4] Plaintiff argues that Deseret Mutual's decision to deny benefits should be viewed with "heightened skepticism" because Deseret Mutual is inherently conflicted and committed multiple procedural violations. Pl.'s Mem. Supp. of Mot. Summ. J. 20-21, ECF 32. Defendant disagrees with the legal and factual basis for Plaintiff's contentions. Def.'s Mem. Opp. to Pl.'s Mot Summ. J. 10, ECF 38. This Court recognizes that a heightened level of skepticism should be applied in cases where the administrator has a conflict or commits procedural violations. *Anderson*, 588 F.3d 646-47. However, the Court makes no determination about the level of skepticism that is proper in this case because the Court finds Deseret Mutual abused its discretion without heightened skepticism.

PAGE 6 - OPINION AND ORDER

In reviewing for abuse of discretion, an ERISA plan decision "will not be disturbed if reasonable." *Conkright v. Frommert*, 559 U.S. 506, 521 (2010) (internal quotation marks omitted). This Court "equate[s] the abuse of discretion standard with arbitrary and capricious review." *Tapley v. Locals*, 728 F.3d 1134, 1139 (9th Cir. 2013). Under this standard, Deseret Mutual's interpretation of the plan language "is entitled to a high level of deference and will not be disturbed unless it is not grounded on any reasonable basis." *Id*. (internal quotation marks omitted). Moreover, "[a] plan administrator abuses its discretion if it renders a decision without any explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or fails to develop facts necessary to its determination." *Anderson*, 588 F.3d at 649 (citing *Schikore v. BankAmerica Supplemental Ret. Plan,* 269 F.3d 956, 960 (9th Cir. 2001)).

## II.     Summary Judgment Standard

Traditionally, summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[I]n ERISA cases governed by the abuse of discretion standard[,] . . . a motion for summary judgment is, in most respects, merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929-30 (9th Cir. 2012) (citations and quotation marks omitted). In addition, "judicial review of benefits determinations is limited to the administrative record—that is, the record upon which the plan administrator relied in making its benefits decision[.]" *Id.* at 930 (internal quotation marks omitted).

## DISCUSSION

I.   **Denial of Benefits**

In this proceeding, Deseret Mutual offers two bases for its denial of Ms. Dick's radiation treatment: (1) Ms. Dick failed to meet Deseret Mutual's Medical Policy requirements for radiation therapy as a bridge for a liver transplant, Def.'s Mot. Summ. J. 14-18, ECF 35; and (2) Ms. Dick's treatment was Investigational/ Experimental and thus a non-covered expense under the Plan. Def.'s Reply in Supp. Summ. J. 7-8, ECF 39.

   A.   **Denial Based on the Medical Policy**

As noted above, Deseret Mutual relied exclusively on the Medical Policy to deny benefits. DMBA 00332. This was an abuse of discretion. The Medical Policy was not a Plan document, and there was no silence or ambiguity within the Plan that would have permitted Deseret Mutual to rely on the Medical Policy as the basis for its denial. Further, Deseret Mutual failed to provide a basis for its denial that is supported by the plain language of the Plan. Thus, Deseret Mutual's reliance on the Medical Policy as the sole basis to deny Ms. Dick coverage conflicts with the plain language of the Plan and was an abuse of discretion. *See Anderson*, 588 F.3d at 649 ("A plan administrator abuses its discretion if it . . . . construes provisions of the plan in a way that conflicts with the plain language of the plan[.]").

ERISA administrators can deny benefits when those benefits are not covered by the administrator's reasonable construction of the ERISA plan under the applicable standard of review. *Sznewajs v. U.S. Bancorp Amended & Restated Supplemental Benefits Plan*, 572 F.3d 727, 735 (9th Cir. 2009). ERISA administrators may use extrinsic documents to interpret or apply the plan document; however, when using an extrinsic document to interpret the plan, there must first be a silence or ambiguity in the plan that the extrinsic document cures. *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1143-44 (9th Cir. 2002) (holding

PAGE 8 - OPINION AND ORDER

ERISA administrator abused its discretion by using its summary of benefits handbook, a plan document, to interpret an unambiguous provision in its master plan document). When using an extrinsic document to apply the plan, the ERISA administrator cannot solely rely on this document to exclude coverage when other evidence shows that coverage is proper. *Jamie F. v. UnitedHealthcare Ins. Co.*, 474 F. Supp. 3d 1052, 1063 (N.D. Cal. 2020) (holding agency reliance on its guidelines for mental health coverage to determine medical necessity under the plan was improper when the plaintiff submitted compelling evidence for coverage that was more specific and supported than the administrator's guidelines).

      To begin with, this Court rejects Deseret Mutual's argument that the Medical Policy was part of the Plan. The Medical Policy explicitly states that it is not part of the ERISA Plan, nor is it a contract. DMBA 00843 (stating Deseret Mutual's Medical Policy is not the ERISA Plan nor is it a contract; it is offered only for informational purposes, can be updated at any time, and if it conflicts with the Plan, the Plan controls). Moreover, if Deseret Mutual had intended for the Medical Policy to define the types of brachytherapy that are covered versus excluded expenses, it could have referred to the Medical Policy in the Plan as it did in other sections.[5] Finally, Ms. Dick was not provided the Medical Policy throughout the entire administrative process. DMBA 00881, 0089 (stating Deseret Mutual had a policy not to give out copies of the Medical Policy). A policy that expressly states that it is not part of an ERISA Plan, is not referenced within the Plan documents, and is withheld from the Plan participant pursuant to the administrator's policy cannot reasonably be considered to be part of the ERISA Plan.

---

[5] *See, e.g.*, DMBA 00184 (The Plan covering "Allergy injections performed at a Physician's or Specialist's office only for certain diagnoses in accordance with the Plan Administrator's Medical Policy."); DMBA 00185 (stating anesthesia Services "are only covered pursuant to the Plan Administrator's policy."); DMBA 00214 (stating care for cosmetic purposes is not covered unless "related to an Injury meeting the Plan Administrator's current Medical Policy criteria.").

PAGE 9 - OPINION AND ORDER

Because the Medical Policy was not a Plan document, Deseret Mutual could only rely on the Medical Policy if there was some silence or ambiguity that the Medical Policy cured. *Bergt*, 293 F.3d at 1143-44. Even if the Medical Policy were a plan document, Deseret Mutual could still only exclude coverage based on this policy if the Master Plan Document's provision did not unambiguously cover the procedure. *Id.* No such silence or ambiguity exists here.

As noted above, Deseret Mutual asserts that Ms. Dick's treatment was an "excluded expense" under the Plan. Def.'s Mot. 15-16. The Plan defines excluded expenses as "[a]ny charges that are not Covered Expenses under the Plan, including the expenses set forth on Appendix C." DMBA 00163. Appendix C lists radiation therapy as a *covered* expense but notes that "Preauthorization is required for certain radiation therapy such as . . . brachytherapy. [And f]ailure to obtain Preauthorization results in a $200 penalty per day if approved on appeal or review." DMBA 00207.

Deseret Mutual argues the preauthorization requirement means only certain brachytherapy treatments will be covered expenses under the Plan. Def.'s Reply 7-8, ECF 39. Deseret Mutual supports this contention with Plan language that states, "Preauthorization is required to be eligible for certain benefits under the Plan and gives the Covered Individual guidelines regarding which Service is covered under the Plan prior to committing any costs for such Service." DMBA 00166. The Plan also states, "Preauthorization does not guarantee benefits will be paid under the Plan. If the Plan Administrator denies the claim(s), the Covered Individual will be responsible for all charges." DMBA 00177.

The requirement of preauthorization for a particular type of procedure under the Plan does not confer unlimited discretion to the ERISA administrator to deny any form of brachytherapy as an excluded expense. Even where preauthorization is required, the ERISA

PAGE 10 - OPINION AND ORDER

administrator still must provide adequate reasons based on a sufficient investigation for denying coverage under the Plan. *See, e.g.*, *Yox v. Providence Health Plan*, 659 F. App'x 941, 943 (9th Cir. 2016) (holding ERISA administrator abused its discretion in denying preauthorization by failing to adequately investigate and explain the denial). The preauthorization requirement is procedural, and to deny treatment, Deseret Mutual was required to rely on other specific Plan provisions—not the Medical Policy—to demonstrate that brachytherapy was a non-covered expense.[6] Thus, the fact that preauthorization is required does not make the listing of brachytherapy as a covered expense ambiguous.

The SPD, which Deseret Mutual also relies upon, does not change this analysis. The SPD states that "all procedures, services, therapies, devices, etc., must meet our medical criteria to be eligible for benefits. If your situation doesn't meet our *medical guidelines* and DMBA ultimately denies benefits for the service, you're responsible for all charges." DMBA 000022 (emphasis added). Deseret Mutual asserts that "there can be no doubt that the Medical Policy contains DMBA's *medical guidelines* for radiation therapy . . . ." Def.'s Mem. Opp. to Pl.'s Mot Summ. J. ("Def.'s Resp.") 6-7, ECF 38 (emphasis added). Deseret Mutual's reliance on the SPD is misplaced. The SPD is not relevant if the Plan master document is unambiguous and more favorable to the employee. *See Bergt*, 293 F.3d at 1143-44 ("The plan master document is the main document that specifies the terms of the plan, and employees should be entitled to rely on its unambiguous provisions."). Further, the SPD itself notes, "if there is any discrepancy or conflict between information in this document and other plan materials, the terms outlined in the Legal Plan Document will govern." DMBA 00022, 00030. As noted above, Deseret Mutual has

---

[6] For example, Deseret Mutual could have denied Ms. Dick coverage if it adequately investigated and explained why Ms. Dick's treatment was not medically necessary or was an Investigational/Experimental treatment. DMBA 00161, 00163, 00164.

not identified any ambiguity in the Plan. Allowing Deseret Mutual to incorporate its unspecified "medical guidelines" into the Plan through the SPD would be contrary to the Plan and less favorable to Ms. Dick. Accordingly, this Court cannot conclude the SPD makes it ambiguous whether brachytherapy is listed as a covered expense in Appendix C of the Plan.

In sum, there was no reasonable basis for Deseret Mutual to conclude that it was entitled to deny treatment solely based on independent criteria listed in its Medical Policy, which was not a Plan document. Rather, the language of the Plan should have controlled, and Deseret Mutual did not rely on any Plan provisions that would have made brachytherapy an excluded expense. The procedural requirement of preauthorization did not make it ambiguous whether brachytherapy was listed as a covered expense, and Deseret Mutual was not permitted to rely on the SPD in the absence of any ambiguity in the Plan. Accordingly, Deseret Mutual's reliance on the Medical Policy as the basis for denying Ms. Dick's brachytherapy conflicted with the plain language of the Plan and was an abuse of discretion.

**B.     Denial Based on Investigational/Experimental Treatment**

Deseret Mutual also argues that it did not abuse its discretion because SIRT is excluded from coverage under the Plan because it is Investigational/Experimental. Def.'s Resp. 14-15. Indeed, the Plan expressly lists Investigational/Experimental expenses as excluded expenses, DMBA 00216, and specifically defines Investigational/Experimental treatment. DMBA 00164. But because Deseret Mutual did not rely on this basis as a denial in the administrative proceedings, it cannot do so here.

Deseret Mutual did not reference "Investigational/Experimental" treatment as a basis to deny Ms. Dicks' claim initially or in the first-level appeal. DMBA 00691; DMBA 00432. The first time Deseret Mutual referenced this phrase in its correspondence with Ms. Dick was in the

final denial letter, where it simply noted a SPD policy that stated Investigational/ Experimental treatments were not covered. DMBA 00327. But Deseret Mutual provided no explanation as to why Ms. Dick's treatment was Investigational/Experimental, and instead relied solely on the Medical Policy, as discussed above. DMBA 00332.[7]

"A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court[.]" *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719 (9th Cir. 2012) (holding the administrator "forfeited the ability to assert [the medical necessity] defense in the litigation" because it "[o]nly once during its extensive communication with [the plaintiff] suggest[ed] that medical necessity might be an issue."); *see also Collier v. Lincoln Life Assurance Co. of Bos.*, 53 F.4th 1180, 1188 (9th Cir. 2022) ("The court must refrain from fashioning entirely new rationales to support the administrator's decision. Such an approach would evade ERISA's protections for the same reasons a plan administrator undermines ERISA's protections when asserting new arguments for the first time in litigation."). Instead, "[a]n ERISA plan administrator who denies a claim must explain the 'specific reasons for such denial' and provide a 'full and fair review' of the denial." *Harlick,* 686 F.3d at 719 (citing 29 U.S.C. § 1133)). "The administrator must also give the claimant information about the denial, including the 'specific plan provisions' on which it is based and 'any additional material or information necessary for the claimant to perfect the claim.'" *Id*. (citing 29 C.F.R. § 2560.503-1(g)).

---

[7] Deseret Mutual did not even reference "Investigational/Experimental" treatment as a basis for the denial in its initial Motion for Summary Judgment. Instead, Deseret Mutual waited until it responded to Plaintiff's motion to raise the issue. *See* Pl.'s Reply. in Supp. Summ. J. 14, ECF 40 (discussing the timeline of this issue).

PAGE 13 - OPINION AND ORDER

This Court's role is to determine whether the record supports the administrator's decision and reasoning under the applicable standard. This Court cannot affirm the decision based on additional evidence or reasons the administrator did not consider or explain. *See Collier*, 53 F.4th at 1188 (holding district court erred in adopting a specific denial reason that the administrator failed to explain during the administrative process). The record contains no explanation of how the procedure was Investigational/Experimental, so this Court cannot affirm the denial on that basis.[8]

## II.   Statutory Penalties

Plaintiff argues that statutory penalties are warranted in this case because Deseret Mutual failed to provide the Medical Policy it relied on to Ms. Dick throughout the administrative review process and for over 300 days after Plaintiff's counsel made its written request for all pertinent documents. Pl.'s Mem. in Supp. of Mot. Summ. J. ("Pl.'s Mot.") 37-38, ECF 32. Plaintiff asserts that these failures violate ERISA's mandate that administrators provide all documents they rely on to make decisions, so Plaintiff is entitled to statutory damages in the full amount of $110 per day. Pl.'s Mot. 37-38. This Court agrees in part.

Under ERISA's regulations, a claimant "shall be provided, upon request . . . , copies of, all documents, records, and other information relevant to the claimant's claim for benefits." *See* 29 C.F.R. §§ 2560.503-1 (h)(2)(iii). "A document, record, or other information shall be

---

[8] At oral argument, Deseret Mutual argued that this issue was raised in the final denial letter, and the lack of a full explanation was merely a procedural violation. "When an administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures." *Abatie*, 458 F.3d at 974. Had Deseret Mutual's final letter actually explained why Ms. Dick's treatment was Investigational/Experimental, then perhaps this would only be a procedural violation. However, because Deseret Mutual made no attempt to explain this basis for its decision, this is an issue that Deseret Mutual failed to effectively raise in the administrative proceeding.

PAGE 14 - OPINION AND ORDER

considered 'relevant' to a claimant's claim if such document, record, or other information . . . [w]as relied upon in making the benefit determination[.]" 29 C.F.R. §§ 2560.503-1 (m)(8)(i).

Pursuant to ERISA § 502(c)(1), when an ERISA plan participant requests plan documents from his plan administrator, but the plan administrator does not provide the documents within 30 days, the plan participant may be entitled to recover $110 a day until the documents are produced. 29 C.F.R. § 2575.502c-1. This liability is triggered only when plan administrators fail "to produce documents that they are required to produce as plan administrators." *Lee v. ING Groep, N.V.*, 829 F.3d 1158, 1162 (9th Cir. 2016). 29 C.F.R. § 2575.502c-1 states a penalty may be assessed "in the court's discretion." In exercising that discretion, courts often consider, among other factors, "bad faith or intentional misconduct by the administrator, the length of delay, the number of requests made and the extent and importance of the documents withheld, and any prejudice to the participant." *Barling v. UEBT Retiree Health Plan*, 145 F. Supp. 3d 890, 895 (N.D. Cal. 2015).

At oral argument, Deseret Mutual acknowledged that it failed to provide the Medical Policy when requested and that statutory penalties are warranted.[9] Deseret Mutual argued that this Court should exercise its discretion to reduce the amount of the fine based on the inclusion of the relevant language in the denial letters, Plaintiff's argument that the Medical Policy is not a "plan document," and the alleged lack of prejudice to Plaintiff.

---

[9] In its briefing, Deseret Mutual asserted three reasons why statutory penalties were not warranted: First, Ms. Dick never made the request herself. Second, while Deseret Mutual did not supply Ms. Dick with the full Medical Policy, it did provide verbatim citations to the exact criteria from the policy it based its denial decision on. Third, Ms. Dick failed to meet the Investigational/Experimental criteria. Def.'s Resp. 25. None of these arguments have any basis in ERISA's rules, and Deseret Mutual correctly conceded these issues at oral argument.

When considering all relevant factors, this Court concludes that a penalty of $55 per day is appropriate. There is no factual dispute that Deseret Mutual intentionally withheld the Medical Policy without any legal basis to do so, despite oral and written requests from Ms. Dick's family, which resulted in a two-year delay in obtaining the relevant information. These factors weigh in favor of a large statutory penalty. However, Deseret Mutual quoted the substance of the Medical Policy in its denial letters, which mitigates some of the prejudice toward Ms. Dick. Although it would have been helpful for Ms. Dick to have the complete Medical Policy—which clearly stated that the Medical Policy was not part of the Plan—providing the Medical Policy to Ms. Dick at an earlier stage was unlikely to change the outcome of the administrative process, and it did not prejudice Plaintiff in this proceeding. Accordingly, this Court determines that a $55 per day penalty is appropriate.

## CONCLUSION

For reasons set forth above, the Court GRANTS Plaintiff's Motion for Summary Judgment, DENIES Defendant's motion, and ORDERS judgment in favor of Plaintiff for payment of benefits and statutory penalties in the amount of $55 per day. Plaintiff shall prepare an appropriate Judgment consistent with this Opinion and, after conferring with Deseret Mutual, submit an agreed form of Judgment to the Court for signature within ten days of the date below.

IT IS SO ORDERED.

DATED this 17th day of February, 2023.

_____
ANDREW HALLMAN
United States Magistrate Judge